Susan E. BLACK, Appellant,

v.

Rev. William R. SNYDER,
et al., Defendants,

St. John's Lutheran Church
of Washburn Park,
Respondent.

No. C5–91–71.

Court of Appeals of Minnesota.

June 18, 1991.

Review Denied Aug. 29, 1991.

Gerald T. Laurie, Richard T. Thomson, Andrew E. Tanick, Lapp, Laurie, Libra, Abramson & Thomson, Chartered, Charles A. Cox, Charles A. Cox, III, Cox & Goudy, Minneapolis, for appellant.

Karl L. Cambronne, Chestnut & Brooks, P.A., Minneapolis, for respondent.

Considered and decided by LANSING, P.J., and RANDALL and PETERSON, JJ.

## OPINION

LANSING, Judge.

A pastor challenges the dismissal, on first amendment grounds, of her breach of contract, sexual harassment, reprisal, retaliation, and defamation claims against her former employer, the church. We affirm in part, reverse in part, and remand.

## FACTS

In 1989 Susan Black was hired as an associate pastor at St. John's Lutheran Church of Washburn Park (the church), a local congregation of the Evangelical Lutheran Church of America (the synod). In April 1990, Black filed a discrimination charge against her supervising pastor, William Snyder, with the Minnesota Department of Human Rights. The claim alleged that Snyder repeatedly made unwelcome sexual advances toward her including re-

ferring to the two of them as "lovers," physically contacting her in a sexual manner, and insisting on her companionship outside the work place, despite her objections. Black had informed the church council, members of the "call" and "personnel" committees, and the synod of Snyder's behavior before communicating with the Human Rights Department. Although the church and synod investigated Black's complaint, no affirmative steps were taken to stop the alleged harassment.

Less than three months after her report to the Human Rights Department, the church held a congregational meeting at which it voted to discharge Black. The reason stated for discharge was Black's "inability to conduct the pastoral office efficiently in this congregation in view of local conditions."

Black sued the church, the synod, and Snyder, stating five causes of action: sexual harassment and retaliation under Minn. Stat. ch. 363 (Minnesota Human Rights Act); breach of contract; defamation; and wrongful termination under Minn.Stat. § 181.932 ("whistle blower" provision). She sought damages and injunctive relief ordering public admission of the wrongfulness of her discharge and cleansing of her personnel record.

Snyder and the church moved to dismiss for lack of subject-matter jurisdiction and for Black's failure to state a cognizable defamation claim. Concluding that the church's first amendment rights precluded Black's suit, the trial court granted the church's dismissal motion but denied Snyder's, ordering instead that Black amend her complaint to clarify the claims against Snyder. Black appeals, challenging the dismissal of her suit against the church.

## ISSUES

1. Does the first amendment to the United States Constitution prohibit judicial consideration of Black's claims?

2. Does the Minnesota Constitution preclude Black's sexual harassment claim against the church?

## ANALYSIS

The church submitted documentary evidence in its motion to dismiss. The court's failure to exclude these materials effectively converted the motion into one for summary judgment. *See* Minn.R.Civ.P. 12.02; *Johnson v. Edwards*, 467 N.W.2d 333 (Minn.App.1991). Whether treated as a rule 12 dismissal or a summary judgment, however, the specific issues for review are questions of law: whether the religious freedoms guaranteed by the United States or Minnesota Constitutions preclude the court from adjudicating Black's claims.

### I

In dismissing Black's suit against the church, the trial court concluded that reviewing matters of church administration and governance would interfere with the church's free exercise of religion and create an excessive governmental entanglement with religion. Its decision implicates two related but distinct concerns of first amendment law that require separate analysis.

### A

■ The first amendment to the United States Constitution prohibits Congress from interfering with the free exercise of religion. U.S. Const. amend. I. This proscription applies to the states by virtue of the fourteenth amendment. *Employment Div., Dep't of Human Resources of Oregon v. Smith*, —— U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940)). The free exercise clause affords an absolute right to hold religious beliefs of whatever nature; however, it does not absolutely protect religiously based conduct. *See Smith* at ——, 110 S.Ct. at 1599.

To determine the constitutionality of a regulation burdening the free exercise of religion, courts traditionally required that the regulation serve a "compelling state interest" that outweighed the detrimental impact on religious practice. *See, e.g., Bob Jones University v. United States*, 461 U.S. 574, 603–04, 103 S.Ct. 2017, 2034–35,

76 L.Ed.2d 157 (1983); *State by McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844, 851 (Minn.1985). Courts also examined whether the governmental interest could be achieved through alternative, less restrictive regulation. *See, e.g., Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981); *Sports & Health Club*, 370 N.W.2d at 851.

Applying this compelling-interest analysis, several circuit courts upheld dismissals of suits brought by clergy against their supervisors and church employers. *See Minker v. Baltimore Annual Conf. of United Methodist Church*, 894 F.2d 1354 (D.C.Cir.1990); *Rayburn v. General Conf. of Seventh–Day Adventists*, 772 F.2d 1164 (4th Cir.1985), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986); *McClure v. Salvation Army*, 460 F.2d 553 (5th Cir.), *cert. denied*, 409 U.S. 896, 93 S.Ct. 132 (1972); *see also Scharon v. St. Luke's Episcopal Presbyterian Hospitals*, 929 F.2d 360 (8th Cir.1991) (dismissing chaplain's age and gender discrimination claims against a church-affiliated hospital). The courts reviewing these challenges to church appointments and discharges reasoned that because evaluation of a minister's qualifications or fitness to preach is inherently a matter of ecclesiastical concern, merely maintaining a suit would have an unduly coercive effect on the church's free exercise rights. *See, e.g., Minker*, 894 F.2d at 1357.

The Supreme Court's most recent free exercise decision, *Employment Div., Dep't of Human Resources of Oregon v. Smith*, — U.S. —, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), effected a significant change in first amendment law. Stressing that an individual's religious beliefs may not excuse compliance with an otherwise valid law prohibiting conduct that the state is free to regulate, the Supreme Court allowed the withholding of unemployment benefits from plaintiffs who had been fired for ingesting peyote during religious ceremonies. *Id.* at —, 110 S.Ct. at 1606. An individual cannot seek first amendment exemption from a neutral law of general applicability, the Court held, "on the ground

that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id.* at —, 110 S.Ct. at 1600 (citation omitted).

■ Although governmental classifications based on religion must still be justified by a compelling state interest, the *Smith* majority rejected this analysis for burdens on religious practices imposed by facially neutral laws. *Id.* at —, 110 S.Ct. at 1604 n. 3. The requirement of a compelling state interest is confined to laws that expressly mandate or prohibit religious beliefs or religiously based conduct and to "hybrid" cases alleging violations of the free exercise clause and another constitutional right, such as freedom of speech or of the press. *See Smith* at —, —, 110 S.Ct. at 1599, 1601; *see also Cornerstone Bible Church v. City of Hastings*, 740 F.Supp. 654, 669–70 (D.Minn.1990) (finding neither exception applicable to church's challenge to zoning ordinance).

■ Black's claims are not based on laws that expressly mandate or prohibit religious conduct or beliefs, or involve additional constitutional rights. The claims under the Human Rights Act and section 181.-932 are based on statutes that are otherwise valid, generally applicable, and facially neutral. *See, e.g., Sports & Health Club*, 370 N.W.2d at 851. Consistent with *Smith*, proceeding on these claims does not violate the church's free exercise rights. Similarly, Minnesota's decisional law relating to breach of contract and defamation are content neutral, and the free exercise clause does not prohibit their application to most employment relationships of religious organizations.

## B

■ The second prong of first amendment religious freedom prohibits the making of laws "respecting an establishment of religion." U.S. Const. amend. 1. To be valid under the establishment clause, a governmental regulation must (1) have a secular purpose; (2) neither advance nor inhibit religion in its primary effect; and (3) not foster excessive governmental entan-

glement with religion. *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Only the issue of excessive entanglement is disputed in this case.

■ Whether governmental regulation creates excessive entanglement typically depends on the character and purpose of the institution involved, the nature of the regulation's intrusion into religious administration, and the resulting relationship between the government and the religious authority. *See Lemon* at 614–15, 91 S.Ct. at 2112. When claims involve "core" questions of church discipline and internal governance, the Supreme Court has acknowledged that the inevitable danger of governmental entanglement precludes judicial review. *See Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 717, 721, 96 S.Ct. 2372, 2384, 2386, 49 L.Ed.2d 151 (1976). *See generally* L. Tribe, *American Constitutional Law* § 14–11 (2d ed. 1988) (identifying several doctrines of entanglement).

■ Relying on *Milivojevich,* the federal courts have refrained from enforcing litigants' claims that require "a searching and therefore impermissible inquiry into church doctrine." *See Minker,* 894 F.2d at 1359–60 (quoting *Milivojevich* 426 U.S. at 723, 96 S.Ct. at 2387). Inquiry into a church's reasons for rejecting an individual for pastorship, even for the purpose of showing pretext, would cause excessive entanglement. *See Minker,* 894 F.2d at 1360–61. However, when the pastor's claims do not require such inquiry, but may be resolved by relying on "neutral methods of proof," the first amendment does not prevent judicial review. *See id.* at 1361 (deciding pastor's breach of oral contract claim would not necessarily entangle court in matters of church governance or doctrine).

■ Black's breach of contract, retaliation, and statutory "whistle blower" claims relate specifically to factors of her appointment as an associate pastor and discharge. These claims are fundamentally connected to issues of church doctrine and gover-

nance and would require court review of the church's motives for discharging Black. Regardless of the laws' purposes or primary effects, both *Milivojevich* and *Lemon* require dismissal of these claims.

■ Black's defamation claim is based on the church's stated reason for her discharge as "inability to conduct her ministry efficiently." This claim would require a similar review of the church's reasons for discharging Black, an essentially ecclesiastical concern. We disagree with the trial court's alternative ground for dismissal, that the claim was inadequately pleaded. The characterization of the alleged defamation was sufficient without specifying the date, time, or place of the alleged publications. *See* Minn.R.Civ.P. 9.06 (averments of time and place are material but not affirmatively required); Minn.R.Civ.P. 8.01 (requiring a short statement of claim entitling pleader to relief). The impermissible entanglement of doctrinal and disciplinary issues, however, is sufficient to support the dismissal of this claim, and the corresponding request for injunctive relief.

■ Black's discharge by congregational vote, rather than by the synod itself, does not undermine the doctrinal connection. The congregational vote was conducted according to church procedure established in its constitution. Although deference is traditionally afforded to decisions of a hierarchical church's highest authority, *see Milivojevich* 426 U.S. at 718, 96 S.Ct. at 2384, the prohibition against litigating matters at the core of a church's religious practice requires dismissal of Black's discharge-related claims.

■ Black's remaining claim for sexual harassment is based on predischarge conduct by Snyder and the church. She claims that Snyder's conduct created a hostile work environment, which the church failed to prevent or to remedy, and that these conditions violated the Human Rights Act.

We recognize that sexual discrimination inheres in the pastoral appointments of some churches and has been granted, in effect, a constitutional exemption under both the free exercise and establishment

clauses. However, no court has extended a similar protection over sexual *harassment* claims based on conduct during the employment relationship. Black's sexual harassment claim is unrelated to pastoral qualifications or issues of church doctrine. Because she does not seek reinstatement but only monetary damages, any prospective remedy would not require extensive court oversight. *See Minker*, 894 F.2d at 1360 (nonintrusive remedy of monetary damages would avoid excessive entanglement on trial of plaintiff's oral contract claim).

 The establishment clause is not an automatic barrier to governmental regulation. *See Tony & Susan Alamo Foundation v. Sec'y of Labor*, 471 U.S. 290, 105 S.Ct. 1953, 1963–64, 85 L.Ed.2d 278 (1985) (applying FLSA to religious foundation); *Salvation Army v. New Jersey Dep't of Community Affairs*, 919 F.2d 183 (3rd Cir. 1990) (applying state building regulations to religious organization). Excessive entanglement is, ultimately, a question of degree. *See Walz v. Tax Comm'n of the City of New York*, 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970). Permitting Black's claim to go forward presents no greater conflict with the church's disciplinary authority than that presented in cases enforcing child abuse laws. *See, e.g., State v. Motherwell*, 114 Wash.2d 353, 788 P.2d 1066, 1073–74 (1990) (conviction of religious counselors for failure to comply with child abuse reporting statute did not violate establishment clause). We hold, therefore, that the first amendment does not bar Black from litigating her sexual harassment claim.

## II

██ Our conclusion that the United States Constitution does not prohibit trial of Black's sexual harassment claim compels review of the scope of this state's own constitutional protections. Article I, section 16 of the Minnesota Constitution prohibits state interference with "freedom of conscience" and requires a weighing of competing interests whenever such rights are burdened. *State v. Hershberger*, 462 N.W.2d 393, 398 (Minn.1990); *State by Cooper v. French*, 460 N.W.2d 2, 9 (Minn.), *reh'g denied* (Oct. 8, 1990). The constitution permits consideration only of interests implicating "the peace or safety of the state." Minn. Const. art. I, § 16; *French*, 460 N.W.2d at 9. Even when the state establishes a compelling interest, its regulation must be shown to be the least restrictive alternative for preserving both the governmental and religious interests involved. *Hershberger*, 462 N.W.2d at 398–99.

██ We are unpersuaded that enforcing the Human Rights Act's harassment prohibitions would actually burden the church's religious practices, in light of the church's own policy against such conduct. Even if this regulation would incidentally burden religious activity or belief, Black is entitled to assert this claim because the state's interest in eradicating sexual harassment in the work place is compelling, *see Sports & Health Club*, 370 N.W.2d at 854, and we perceive no adequate, less restrictive alternative to enforcement.

## DECISION

Federal constitutional prohibitions on excessive entanglement with internal church affairs prohibits judicial review of Black's discharge-related claims. However, because Black's sexual harassment claim does not involve scrutiny of church doctrine, interfere in matters of an inherently ecclesiastical nature, or infringe upon the church's religious practice, we reverse the trial court's dismissal of this claim.

Affirmed in part, reversed in part, and remanded.

RANDALL, Judge, dissenting.

I respectfully dissent. Susan Black's sexual harassment claim against St. John's Lutheran Church in civil court was properly dismissed by the trial court because of the United States Constitution's prohibition against excessive governmental entanglement with religion.

The First Amendment of the United States Constitution provides:

Congress shall make no law respecting an establishment of religion * * *.

U.S. Const., amend. I. The Fourteenth Amendment of the United States Constitution makes the establishment clause applicable to the states.

The Supreme Court has developed a three-part test for implementing the establishment clause. Governmental action must have a secular purpose; its primary or principal effect must be one that neither advances nor inhibits religion; and the action must not foster an excessive governmental entaglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). If the challenged governmental action fails any one of the three *Lemon* factors, it must fall. This state court can not step in to salvage unconstitutional governmental action.

The focus of this case is Black's sexual harassment action against St. John's Lutheran Church under the Minnesota Human Rights Act, Minn.Stat. Ch. 363 (1988). The core of her claim involves how St. John's Lutheran Church disciplines, transfers, and terminates its religious personnel. Her cause of action against St. John's, by definition, fosters excessive governmental entanglement with religion. Black is free, as the trial court found (and not challenged on appeal), to pursue her claims against Reverend William Snyder, her supervising pastor. It is her derivative lawsuit against respondent St. John's Lutheran Church that is the problem.

Black reported the alleged sexual harassment by William Snyder to the church council, members of the personnel committee, and the Synod. Both the Church and the Synod investigated Black's complaint. No direct disciplinary action was taken against William Snyder as a result of these investigations. Logic dictates that after an investigation the "lack" of direct disciplinary action is a form of discipline itself. A church's right to look at a pastor's actions, and decide that they warrant suspension or firing, or do not warrant suspension or firing, are protected by the first amend-

ment prohibition against excessive government entanglement on church matters.

Simply put, Black's lawsuit against St. John's is based on what she perceives to be inadequate supervision and discipline of a fellow religious.

The majority contends that Black's sexual harassment claim against St. John's is unrelated to pastoral qualifications or issues of church doctrine because she seeks only monetary damages and any remedy would not require extensive court oversight. I disagree. The majority opinion concedes the viability of *Minker v. Baltimore Annual Conference*, 894 F.2d 1354 (D.C.1990), *Scharon v. St. Luke's Episcopal Presbyterian Hospitals*, 929 F.2d 360 (8th Cir.1991), and the other cited cases upholding dismissal of suits brought by clergy against their church based on types of discrimination such as age or gender. But the majority misuses *Minker* where it claims that *Minker* allows this sexual harassment suit because the plaintiff seeks only monetary damages. *Minker* says exactly the opposite (if we can equate gender discrimination with age discrimination, and I find no case that states a difference between discriminations for purposes of a first amendment analysis). Minker, a pastor, had an age discrimination case against his church which the *Minker* court found barred by the first amendment regardless of its merits. *Minker* held, in part,

(1) maintenance of age discrimination suit would violate free exercise clause; (2) court lacked jurisdiction to hear minister's claim that church constitution created enforceable agreement that church would not discriminate against him on basis of age in making appointments; * * *

*Minker*, 894 F.2d at 1354. That holding parallels Black's gender discrimination claim against St. John's.

On an issue which we do not have present in Black's case, the *Minker* court had to pass on Minker's claim of some type of oral contract to provide him with a different and better congregation in exchange for the consideration of continued work on temporary assignment. The court held

that Minker's church, "like any other employer," is bound to perform promissory obligations in accord with contract law. *Id.* at 1361. That is neither a new nor an unusual holding, nor is it relevant to Black's discrimination claim at issue. Contrary to the majority, I find *Minker* squarely supporting the trial court's dismissal of Black's claim.

Allowing Black's sexual harassment claim to be tried in a civil court requires court supervision over St. John's disciplinary decision regarding William Snyder. The hierarchy of the Church and Synod has discretion to discipline its pastoral members. *"[Q]uestions of discipline* and the composition of the church hierarchy *are at the core of ecclesiastical concern." Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 717, 96 S.Ct. 2372, 2384, 49 L.Ed.2d 151 (1976) (emphasis added).

Here, Black complained to the Church and Synod hierarchy of pastoral misconduct. The misconduct complaint was investigated, and the Church and Synod hierarchy exercised their discretion by not formally disciplining Snyder. One could argue that something more should have been done, but we are restrained by the establishment clause from interjecting government oversight into the ecclesiastical decision process on whether to discipline or remove a pastoral member.

> Not only may a church adopt its own idiosyncratic reasons for appointing pastors, but also it "has a legitimate claim to autonomy in the elaboration and pursuit of that goal."

*Minker,* 894 F.2d at 1357.

> The supreme court stated:
> [T]he rule of action which should govern the civil courts * * * is, that, *whenever the questions of discipline* * * * have been decided by * * * these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final * * *.

*Milivojevich,* 426 U.S. at 710, 96 S.Ct. at 2381 (emphasis added).

Litigating Black's claim that the Church and Synod's decision not to discipline William Snyder amounts to sexual harassment will require an improper examination of St. John's internal church values regarding pastoral qualifications. St. John's balanced the value to itself of continued pastoral service by Snyder versus discipline by removal or transfer versus the transfer or termination of Pastor Black.

The working relationship between pastors Snyder and Black, the future location of where they will exercise their pastoral duties, and the discipline, if any, of each are "inextricably linked to doctrine, religious mission, and the exercise of control by the church." *In re Hill–Murray Federation of Teachers v. Hill–Murray High School,* 471 N.W.2d 372, 378 (Minn.App. 1991).

The Ohio Civil Rights Commission could not exercise jurisdiction over a religious school and its hiring practices because it would result in excessive government entanglement with religion. *See generally Dayton Christian Schools, Inc. v. Ohio Civil Rights Comm'n,* 766 F.2d 932, 961 (6th Cir.1985).

Regardless of the merits of Black's claims that St. John's Lutheran Church was lax in training and discipline and that somehow that laxness contributed to Pastor Snyder's sexual harassment of her, I suggest her civil remedies are limited to her ongoing lawsuit against Pastor Snyder. I dissent and would affirm the trial court's dismissal of all cause of action as to St. John's Lutheran Church.