The Reverend Thomas L. BASICH, et al., Respondents,

v.

BOARD OF PENSIONS, EVANGELICAL LUTHERAN CHURCH IN AMERICA (ELCA), Appellant (C8–95–882), Defendant (CX–95–883),

Evangelical Lutheran Church in America (ELCA), Defendant (C8–95–882), Appellant (CX–95–883).

Nos. C8–95–882, CX–95–883.

Court of Appeals of Minnesota.

Nov. 28, 1995.

Review Denied Jan. 25, 1996.

Robert C. Bell, Peterson, Bell, Converse & Jensen, Lynn E. Basich, Roseville, for Respondents.

John D. French, Bonnie M. Fleming, Thomas H. Bennin, Brendan W. Randall, Faegre & Benson, Minneapolis, for Board of Pensions, Evangelical Lutheran Church in America (ELCA).

Robert H. Rydland, LeVander, Zotaley, Vander Linden & Rydland, Michael Stokes Paulsen, Minneapolis, for Evangelical Lutheran Church in America (ELCA).

Charles T. Nixon, Minneapolis, for Amici Curiae The Church of the Nazarene, et al.

Considered and decided by KALITOWSKI, P.J., and HUSPENI and DAVIES, JJ.

## OPINION

KALITOWSKI, Judge.

Respondents, several Lutheran pastors, a lay employee and a Lutheran congregation (Pastors), filed this individual action for breach of contract and breach of fiduciary duty against appellants, the Evangelical Lutheran Church of America (ELCA) and the Board of Pensions of the Evangelical Lutheran Church of America (Board of Pensions). The ELCA and the Board of Pensions moved for summary judgment on the grounds that the First Amendment of the United States Constitution and the Freedom of Conscience Clause of the Minnesota Constitution deprive the court of subject matter jurisdiction in this dispute. The district court denied the motion.

## FACTS

The Pastors participate in defined contribution pension accounts, contributed to by their congregations and administered by the Board of Pensions. The Pastors allege that the Board of Pensions has mismanaged funds by investing and divesting pursuant to social concerns rather than solely in the economic best interests of the plan participants.

The ELCA and the Board of Pensions are organized as Minnesota nonprofit corporations. The ELCA is comprised of 65 Synods governing 11,000 congregations. Each Synod elects representatives to the Churchwide Assembly, the highest legislative authority in the ELCA. When the Churchwide Assembly is not in session, the ELCA is governed by the Church Council. The Board of Pensions was established by the ELCA in 1988 to provide retirement income and benefits to Lutheran pastors and lay church employees. The ELCA Constitution provides that the Board of Pensions is to manage and operate the pension fund with the "design and policy adopted by the Churchwide Assembly." The Board of Pension's Articles of Incorporation provide that the Board is

organized and shall be operated exclusively for religious purposes and exclusively for the benefit of and to assist in carrying out the purposes of the ELCA.

The ELCA Churchwide Assembly and Council have final authority and control over policies implemented by the Board of Pensions.

In 1977 the Lutheran World Federation Assembly declared that apartheid was so contrary to the Lutheran understanding of believers in Christ that it must be rejected as a matter of faith itself. The ELCA expressed its opposition to apartheid by passing a resolution to "see that none of our ELCA pension funds will be invested in companies doing business in South Africa." The Board of Pensions responded in 1988 by adopting the "equivalency policy," whereby the Board of Pensions agreed to divest (and refrain from making new investments) in companies with South African holdings whenever the conditions of risk and return were equal between stocks and bonds held by the Board. The equivalency policy governed investment decisions until its repeal in 1993.

A dissenting group of Lutherans led by respondent Reverend Thomas Basich disagreed with the Churchwide Assembly's divestment policy. Basich and others published articles opposing the ELCA's decision to use its assets as a political weapon and condemning the Board of Pensions for "acquiescing" to the Churchwide Assembly's pressure on the issue of apartheid. Basich requested that he and others be allowed to withdraw their pension funds. The Board of

Pensions denied this request. In response, Basich and others filed a derivative action suit against the Board of Pensions. This court held the Pastors did not have standing to bring a derivative suit. *Basich v. Board of Pensions of Evangelical Lutheran Church in Am.*, 493 N.W.2d 293, 296 (Minn.App. 1992). The Pastors then filed this action for individual relief on the grounds of breach of contract and breach of fiduciary duty.

## ISSUES

1. Does the First Amendment of the United States Constitution prevent the district court from exercising jurisdiction over this dispute?

2. Does the Freedom of Conscience Clause of the Minnesota Constitution prevent the district court from exercising jurisdiction over this dispute?

## ANALYSIS

 A motion for summary judgment shall be granted when there is no issue of material fact and a party is entitled to judgment as a matter of law. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). None of the facts relevant to a determination of this summary judgment motion are disputed. The only remaining issue, therefore, is whether the federal or state constitution deprives the court of subject matter jurisdiction of the Pastors' claim. This issue is a question of law. A reviewing court is not bound by and need not give deference to a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984).

### I.

The ELCA and the Board of Pensions allege that the First Amendment to the United States Constitution deprives the district court of subject matter jurisdiction. The First Amendment provides that

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *.

U.S. Const. amend. I. The Establishment Clause cannot easily be reduced to a single test. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, —— U.S. ——, ——, 115 S.Ct. 2510, 2528, 132 L.Ed.2d 700 (1995). The Supreme Court has held that for an exercise of governmental authority to be valid under the Establishment Clause, it must: (1) have a secular purpose; (2) neither inhibit nor advance religion as its primary effect; and (3) not create excessive entanglement between church and state. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). The Supreme Court has also applied the "principles of neutrality" test, requiring that civil courts hear only disputes which can be determined on the basis of neutral principles of law. *Jones v. Wolf*, 443 U.S. 595, 602, 99 S.Ct. 3020, 3025, 61 L.Ed.2d 775 (1979).

Applying the *Lemon* factors, the parties do not allege that Minnesota contract and trust law lacks a secular purpose or that its primary effect inhibits or advances religion. Therefore, we need only consider whether review of this dispute would cause excessive entanglement between church and state and whether, under *Jones*, this dispute can be resolved by neutral principles of law.

 Whether government action causes excessive entanglement depends on the nature of the intrusion into religious administration, the character and purpose of the involved institutions and the resulting relationship between the religious authority and government. *Lemon*, 403 U.S. at 614–15, 91 S.Ct. at 2112. If a claim involves core issues of ecclesiastical concern, the potential for government entanglement in religious matters prevents judicial review. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 721–23, 96 S.Ct. 2372, 2386–87, 49 L.Ed.2d 151 (1976).

This court has held that the Establishment Clause prevents civil courts of Minnesota from considering a breach of contract claim brought by a pastor against her former church. *Black v. Snyder*, 471 N.W.2d 715, 720 (Minn.App.1991), *review denied* (Minn. Aug. 29, 1991). In *Black*, a Lutheran associate pastor filed a discrimination charge against her supervising pastor alleging sexual harassment. *Id.* at 717–18. Shortly thereafter, the congregation voted to dis-

charge Black and Black sued the church for, among other claims, breach of contract. *Id.* at 718. This court held that hearing Black's breach of contract claim would cause excessive entanglement because it would require the court to examine issues of church doctrine and governance and would require court review of the church's motives. *Id.* at 720.

This court has also refused to hear a defamation case to avoid excessive entanglement under the Establishment Clause. *Schoenhals v. Mains,* 504 N.W.2d 233, 236 (Minn. App.1993). The Schoenhals alleged that their pastor defamed them by communicating to the congregation that they had been poor parishioners. *Id.* at 234–35. The pastor alleged that his statements were based in the Bible and in the church's religious beliefs and practices. *Id.* at 235. This court found that while the pastor's statement appeared unrelated to church doctrine, court review of the defamatory statements would require an inquiry into the church's motives and disciplinary matters. *Id.* at 236. Accordingly, this court found that to prevent excessive entanglement, the district court must not hear the case. *Id.*

■ The Pastors argue that a review of this case will not require the court to entangle itself in issues of Lutheran doctrine. We disagree. Delegates to the Churchwide Assembly, the highest legislative authority of the Lutheran church, voted to divest funds from companies with holdings in South Africa and directed the Board of Pensions to implement the divestment policy. While the Board of Pensions is required to prudently invest its holdings, the ELCA created the Board to *both* provide for pastors' retirement needs *and* assist the ELCA in accomplishing doctrinal goals. The ELCA enacted the equivalency policy in an effort to further its social and doctrinal goals of opposing apartheid. Accordingly, any review of the Board of Pensions' divestment and equivalency policies would entangle the court in reviewing church doctrine and policy.

In addition, the district court would be required to examine church doctrine and organization to determine whether a breach of contract occurred in this case. The plan document is the primary "contract" between the parties. It provides that the Board of Pensions shall discharge its duties with the care that a prudent person would use in the conduct of an enterprise of like character with like aims. Thus, the district court would be required to examine the ELCA's "aims" before it could determine the breach of contract issue. Such inquiry into church motives is forbidden by the Establishment Clause of the United States Constitution.

The Pastors also contend that this case can be resolved on neutral principles of contract and trust law. We disagree. The flaw in this contention is illustrated by the Pastors' admission that the ELCA could properly prohibit investments by the Board of Pensions in morally obnoxious commercial activity such as prostitution or pornography. There are no neutral principles of law that would enable a district court to distinguish between investments that Lutheran doctrine should find to be morally acceptable and those that it should find to be morally unacceptable. We conclude that the Establishment Clause of the First Amendment deprives the district court of subject matter jurisdiction in this dispute because review of this issue would require the district court to look beyond neutral principles of contract and trust law and entangle itself in issues of church doctrine.

### II.

■ The ELCA and the Board of Pensions allege that the Freedom of Conscience Clause of the Minnesota Constitution deprives the district court of subject matter jurisdiction. Article I, section 16 of the Minnesota Constitution provides that

[t]he right of every man to worship God according to the dictates of his own conscience shall never be infringed * * * nor shall any control of or interference with the rights of conscience be permitted, or any preference be given by law to any religious establishment or mode of worship; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace or safety of the state * * * .

The Freedom of Conscience Clause affords greater protection for religious liberties against government action than the federal constitution. *State v. Hershberger,* 462 N.W.2d 393, 397 (Minn.1990). In determining whether government action violates the Freedom of Conscience Clause, Minnesota courts consider whether: (1) the objector's belief is sincerely held; (2) the action burdens the exercise of religious beliefs; (3) the state's interest is compelling; and (4) the state action uses the least restrictive means. *Hill–Murray Fed'n of Teachers v. Hill–Murray High Sch.,* 487 N.W.2d 857, 865 (Minn. 1992). Under the Freedom of Conscience Clause, only governmental interests in "peace or safety" and against "acts of licentiousness" will excuse government imposition on religious freedom. *Hershberger,* 462 N.W.2d at 397.

This court has applied the Freedom of Conscience Clause recently to a discrimination claim brought by a lay church employee against the Eckankar church. *Geraci v. Eckankar,* 526 N.W.2d 391 (Minn.App.1995), *review denied* (Minn. Mar. 14, 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 75, 133 L.Ed.2d 34 (1995). Carol Geraci was a computer programmer for the Eckankar church who claimed that the church discriminated against her on the basis of gender. *Id.* at 395. The church alleged that Geraci was terminated for failing to work harmoniously with her coworkers in disregard of the sacred teachings of Eckankar. *Id.* This court concluded that while the state's interest in eradicating discrimination is compelling, it could not question Eckankar's basis for decisions claimed to be doctrinally related because to do so may compel the church to conform its religious beliefs with the government's or with the majority culture's beliefs. *Id.* at 399.

■ An analysis of the four elements of the Freedom of Conscience Clause test leads us to conclude that allowing the district court's review of this matter would violate the Freedom of Conscience Clause. First, there is no question that the ELCA acted pursuant to a sincerely held religious belief by enacting the equivalency policy. The Lutheran World Federation declared that apartheid must be rejected as a matter of the Lutheran faith itself. Similarly, the Constituting Convention of the ELCA passed a resolution stating that divestment was the appropriate response to the "sin of apartheid."

Second, review of this case would burden the exercise of the ELCA's religious beliefs. If the civil courts were allowed to rescind pension plan contracts every time a group of dissenting participants disagreed with the Board of Pensions' social or moral investment strategies, the ELCA's ability to express its faith through social and moral investment would be substantially compromised. Additionally, as in *Geraci,* to review this case, the district court would be required to question the ELCA's basis for a decision that it contends was founded in Lutheran doctrine. Judicial inquiry into issues of church doctrine is itself a substantial burden. *Id.* Accordingly, a review of this case would burden the ELCA's exercise of religious beliefs.

Third, the government does not have a compelling interest in reviewing this case. The Pastors argue that there is an important governmental interest in providing a forum for review of this matter. We disagree. The forum best suited to review the Pastors' grievance is the Churchwide Assembly. The delegates to the Churchwide Assembly debated the appropriateness of the equivalency policy at length. As the highest legislative authority in the ELCA, the Churchwide Assembly's determination on this issue is final. The civil courts need not hear this case to ensure public "peace or safety" and the Pastors' breach of contract action does not allege an act of "licentiousness," as required by the Minnesota Freedom of Conscience Clause.

Because the Pastors have not alleged a compelling governmental interest in hearing this dispute, we need not address the fourth element of the Freedom of Conscience Clause test. We conclude that a review of this case would substantially burden the ELCA's exercise of religion. Therefore, the Freedom of Conscience Clause of the Minnesota Constitution deprives the district court of subject matter jurisdiction in this dispute.

## DECISION

The district court erred in denying appellants' motion for summary judgment on the grounds that the court did not have subject matter jurisdiction. The district court's decision is reversed and this matter is dismissed pursuant to the Establishment Clause of the First Amendment and the Freedom of Conscience Clause of the Minnesota Constitution.

**Reversed.**