*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1999**

Pastor David Bacon, Pastor Timothy Hepner,
Ruth Dold, and Sharon Hvam, individually and as representatives
of a class of similarly situated persons,
and on behalf of the Evangelical Lutheran Church in America Retirement Plan
and the ELCA Retirement Plan for the Evangelical Lutheran Good Samaritan Society,
Appellants,

vs.

Board of Pensions of the Evangelical Lutheran
Church in America (d/b/a Portico Benefit Services),
Respondent.

**Filed July 25, 2016
Reversed and remanded
Reilly, Judge**

Hennepin County District Court
File No. 27-CV-15-3425

Charles N. Nauen, Lockridge Grindal Nauen P.L.L.P., Minneapolis, Minnesota; and

Michael A. Wolff (pro hac vice), Schlichter, Bogard & Denton LLP, St. Louis, Missouri (for appellants)

Brian W. Thomson, Liz Kramer, Kadee J. Anderson, Stinson Leonard Street LLP, Minneapolis, Minnesota; and

Deborah S. Davidson (pro hac vice), Morgan, Lewis & Bockius LLP, Chicago, Illinois (for respondent)

Eric D. McArthur (pro hac vice), Sidley Austin LLP, Washington, D.C.; and

Steven L. Severson, Aaron D. Van Oort, Blake J. Lindevig, Faegre Baker Daniels LLP, Minneapolis, Minnesota (for amicus curiae Church Alliance)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Stauber, Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

Appellants challenge the district court's dismissal of their claims relating to respondent's management of retirement plans. Appellants assert that the district court erred by determining that adjudication of their claims would involve excessive entanglement with religion and thus that the district court lacked jurisdiction over the claims. Because the court has jurisdiction over appellants' claims, and some of appellants' claims can be resolved using neutral principles of law, we reverse and remand.

## FACTS

Appellants (Pastor David Bacon, Pastor Timothy Hepner, Ruth Dold, and Sharon Hvam) are participants in retirement plans maintained and administered by respondent, the Board of Pensions of the Evangelical Lutheran Church in America (d/b/a Portico Benefit Services) (Portico). Pastor Bacon and Pastor Hepner are participants in the Evangelical Lutheran Church in America Retirement Plan (the ELCA Plan). Dold and Hvam are lay participants in the Retirement Plan for the Evangelical Lutheran Good Samaritan Society (the GSS Plan).[1] Appellants seek to bring an action, individually and as representatives of a class, against Portico for breach of fiduciary duty, breach of trust, and fraud and concealment based on Portico's administration and management of the Plans.

---

[1] For purpose of this opinion the ELCA Plan and the GSS Plan will be referred to collectively as the Plans.

Portico is a nonprofit corporation incorporated by the Evangelical Lutheran Church in America (ELCA). The ELCA constitution establishes the responsibilities of Portico. Portico controls and manages the operation and administration of the Plans and is the trustee of the Plans.[2] The Plans are defined-contribution plans. Plan participants can invest in 20 funds selected and maintained by Portico. Of the 20 fund options, 8 are deemed "social purpose funds." The "social purpose funds invest in ways that are compatible with the social policies of the ELCA" and use a three-pronged approach to investing which includes "[s]hareholder advocacy," "[s]ocial screening," and "[p]ositive social investments."

The plan documents contain Portico's requisite fiduciary duties as follows:

> Each fiduciary shall discharge her/his duties with respect to the Retirement Plan, solely in the interests of Members, and in accordance with the following requirements:
>
> (a) For the exclusive purpose of providing benefits to Members and defraying reasonable expenses of administering the Retirement Plan,
>
> (b) With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims,
>
> (c) By diversifying the investments of the Retirement Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so, and

---

[2] The Plans are "church plans," and thus not subject to the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1003(b)(2) (2012). The Minnesota Prudent Investor Act (MPIA) does not exempt church plans. *See* Minn. Stat. § 501C.0901 (Supp. 2015).

> (d) In accordance with the provisions of this Retirement Plan and the [Retirement Plan] Trust.

Appellants allege that Portico breached its fiduciary duty by failing to exercise reasonable care, skill, and diligence in managing the assets of the Plans, and failing to act in the exclusive interest of participants in the selection and retention of plan-investment options. Appellants contend that "Portico selected and retained excessive cost, poorly-performing ELCA investment funds that generated revenue to itself, while failing to consider or analyze the use of superior low-cost options that were readily available to the Plans," and "[a] reasonable investigation would have revealed to a prudent fiduciary that the ELCA investments were imprudent, selected and retained for reasons other than the best interest of Plan participants, and that other alternatives would have better served participants' interests." Additionally, appellants allege that "Portico received compensation for administrative and recordkeeping services provided to the Plans in the form of administrative expenses that were assessed against each investment option offered in the Plans"; that "[t]he compensation that Portico received from the Plans for administrative and recordkeeping services was and is inappropriate and/or unreasonable for the services provided to the Plans"; and that "[a]s a result, Portico violated the Minnesota Prudent Investor Act requirement to ensure that the costs of managing Plan assets are appropriate and reasonable."

Appellants allege Portico breached trust by: (1) "failing to exercise care, skill, prudence, and diligence in the selection and retention of Plan investment options because it selected and retained excessive cost, poorly-performing ELCA investment funds that

4

generated revenue to itself while failing to consider or analyze the use of superior low-cost options that were readily available"; (2) "offering ELCA investment funds because they benefited Portico instead of choosing funds for the exclusive purpose of providing benefits to participants"; (3) "failing to defray only reasonable expenses of administering the Plans because the compensation that Portico received from the Plans for administrative and recordkeeping services was and is unreasonable for the services provided to the Plans"; (4) "failing to exercise care, skill, prudence, and diligence in monitoring and negotiating Plan expenses"; and (5) "setting its own compensation in a manner that benefited Portico at the expense of participants."

Finally appellants allege fraud and concealment by Portico because "Portico intentionally concealed the excessive nature of the fees charged to the Plan by falsely portraying them as competitive, and deliberately using for comparison [purposes] retail funds that are far more expensive than the institutional rates readily available to large plans."

Portico filed a motion to dismiss the suit on the grounds that appellants' claims are barred by the Establishment and Free Exercise Clauses of the First Amendment to the U.S. Constitution and the Freedom of Conscience Clause of the Minnesota Constitution because Portico was established as a ministry by the ELCA. In October 2015, in a thorough and thoughtful memorandum of law, the district court determined that it lacked subject-matter jurisdiction, granted Portico's motion, and dismissed all of appellant's claims with prejudice. This appeal follows.

**D E C I S I O N**

Appellants argue the district court erred in dismissing their claims because resolution of their claims would not involve excessive entanglement in religion. At the time the appeal was filed, Minnesota courts treated claims of religious entanglement in violation of the First Amendment to the U.S. Constitution and the Minnesota Constitution as challenges to the court's subject-matter jurisdiction. *See, e.g.*, *Odenthal v. Minn. Conference of Seventh-Day Adventists*, 649 N.W.2d 426, 434, 441 (Minn. 2002). However, after the parties filed their briefs, the Minnesota Supreme Court issued an opinion that clarified Minnesota courts' analysis of what is commonly referred to as the "ecclesiastical abstention doctrine." *Pfeil v. St. Matthews Evangelical Lutheran Church*, 877 N.W.2d. 528, 534-35 (Minn. 2016). The supreme court concluded, based on *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. Equal Emp't Opportunity Comm'n*, 132 S. Ct. 694, 709 n.4 (2012), that "the ecclesiastical abstention doctrine is not a jurisdictional bar." *Pfeil*, 877 N.W.2d at 535. Although in *Hosanna-Tabor* the United States Supreme Court treated the ecclesiastical abstention doctrine as an affirmative defense on the merits when applied to a state-law tort claim, 132 S. Ct. at 709 n.4, the Minnesota Supreme Court noted that there is "some latitude to decide how the doctrine will be applied in Minnesota courts." *Pfeil*, 877 N.W.2d at 535. It explained that "one possible option is to treat the doctrine as an affirmative defense on the merits," but noted that "the doctrine could also function as a form of abstention, as one of its names implies." *Id.* The supreme court "decline[d] to characterize the doctrine" because the distinction between an affirmative

6

defense and abstention was not briefed on appeal and was "not essential to the disposition" of the case. *Id.*

Due to the timing of *Pfeil*, the parties did not brief the issue of how to treat the ecclesiastical abstention doctrine. However, at oral argument the parties both suggested that, in the present case, it would be appropriate to treat Portico's challenge to the suit based on the First Amendment to the U.S. Constitution and the Minnesota Constitution as an affirmative defense on the merits. Portico contends that this court should affirm the district court's decision under Minnesota Rule of Civil Procedure 12.02(e) on the basis that appellants have failed to state a claim on which relief can be granted. Appellants contend that application of the ecclesiastical abstention doctrine to this case is better suited for consideration after discovery on summary judgment under Minnesota Rule of Civil Procedure 56.03.[3]

We now address the key question on appeal: whether the case can be decided based on "neutral principles of law," *id.* at 533 (quoting *Jones v. Wolf*, 443 U.S. 596, 602-05, 99 S. Ct. 3020, 3025-26 (1979)), or whether resolution of the dispute requires "extensive inquiry by civil courts into religious law and polity." *Id.* (quoting *Serbian E. Orthodox Diocese for the U.S. & Can. v. Milivojevich*, 426 U.S. 696, 709, 96 S. Ct. 2372, 2380 (1976)).

---

[3] At oral argument the parties suggested that ecclesiastical abstention is best viewed as an affirmative defense on the merits and not a form of abstention. The supreme court in *Pfeil* left the resolution of that question for another time as do we.

Under the ecclesiastical abstention doctrine,

> where resolution of . . . disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them.

*Id.* (quoting *Milivojevich*, 426 U.S. at 709, 96 S. Ct. at 2380). However, "the autonomy granted to religious institutions by the First Amendment is not boundless," and "certain situations allow courts to use 'neutral principles of law' to resolve controversies involving religious institutions and their parishioners." *Id.* (quoting *Jones*, 443 U.S. at 602-05, 99 S. Ct. at 3025-26).

> [A] court may decide disputes involving religious organizations, but only if the court is able to resolve the matter by relying exclusively on neutral principles of law, the court does not disturb the ruling of a governing ecclesiastical body with respect to issues of doctrine, and the adjudication does not "interfere[ ] with an internal church decision that affects the faith and mission of the church itself."

*Id.* at 534 (alteration in original) (quoting *Hosanna-Tabor*, 132 S. Ct. at 707).

In reaching the conclusion that adjudication of appellants' claims is barred by the First Amendment, the district court relied heavily on *Basich v. Bd. of Pensions, Evangelical Lutheran Church in Am.*, 540 N.W.2d 82 (Minn. App. 1995), *review denied* (Minn. Jan. 25, 1996). In *Basich*, the Lutheran World Federation declared "that apartheid was so contrary to the Lutheran understanding of believers in Christ that it must be rejected as a matter of faith itself." 540 N.W.2d at 84. The ELCA then expressed opposition to apartheid and

8

passed a resolution that declared none of the ELCA pension funds would be invested in companies doing business in South Africa. *Id.*

Several Lutheran pastors, a lay employee, and a Lutheran congregation (collectively the Pastors) disagreed with the divestment policy and filed an individual action for breach of contract and breach of fiduciary duty against the Board of Pensions, ELCA.[4] The Pastors alleged "that the Board of Pensions ha[d] mismanaged funds by investing and divesting pursuant to social concerns rather than solely in the economic best interests of the plan participants." *Id.* The Pastors argued that a review of their case would not require the court to "entangle itself in issues of Lutheran doctrine." *Id.* at 86. We disagreed and noted that "[w]hile the Board of Pensions is required to prudently invest its holdings, the ELCA created the Board to *both* provide for pastors' retirement needs *and* assist the ELCA in accomplishing doctrinal goals." *Id.* We stated that any review of the Board of Pensions' policy of divesting funds from companies in South Africa due to apartheid "would entangle the court in reviewing church doctrine and policy." *Id.* Additionally, we reasoned that because the plan document was the primary "contract" between the parties and it provided that "the Board of Pensions shall discharge its duties with the care that a prudent person would use in the conduct of an enterprise of like character with like aims," "the district court would be required to examine the ELCA's 'aims' before it could determine the breach of contract issue." *Id.* We concluded that "[s]uch inquiry into church motives is forbidden by the Establishment Clause of the United States Constitution." *Id.* We also rejected the

---

[4] Now known as Portico, the same respondent as in the present case.

argument that the "case [could] be resolved on neutral principles of contract and trust law," because "[t]here are no neutral principles of law that would enable a district court to distinguish between investments that Lutheran doctrine should find to be morally acceptable and those that it should find to be morally unacceptable." *Id.* We concluded that "the Establishment Clause of the First Amendment deprive[d] the district court of subject matter jurisdiction." *Id.*

Appellants argue that *Basich* does not compel a finding of excessive entanglement in this case because there is no core religious doctrinal dispute here as there was in *Basich*. Conversely Portico argues the district court correctly rejected appellants' narrow reading of *Basich*. We are persuaded by appellants' argument because the nature of the complaint in *Basich* is different from the nature of the complaint in this case. The Pastors in *Basich* challenged the Board of Pensions' divestment of funds from companies with holdings in South Africa based on social and moral policy decisions. *Id.* In the instant case, appellants' claims are not tied to a specific policy decision as was the case in *Basich*. Many of the allegations in the complaint allege causes of action that are not tied to religious doctrine.[5]

---

[5] For example, appellants allege Portico "fail[ed] to defray only reasonable expenses of administering the Plans because the compensation that Portico received from the Plans for administrative and recordkeeping services was and is unreasonable for the services provided to the Plans," and that Portico "set[] its own compensation in a manner that benefited Portico at the expense of participants." We see no core religious doctrinal dispute in these types of allegations.

Further, at oral argument, appellants conceded that *Basich* bars any challenge based on a social or moral policy decision of the ELCA.[6]

Pursuant to *Pfeil*,

> a court may decide disputes involving religious organizations, but only if the court is able to resolve the matter by relying exclusively on neutral principles of law, the court does not disturb the ruling of a governing ecclesiastical body with respect to issues of doctrine, and the adjudication does not "interfere[ ] with an internal church decision that affects the faith and mission of the church itself."

*Pfeil*, 877 N.W.2d at 534 (alteration in original) (quoting *Hosanna-Tabor*, 132 S. Ct. at 707). Thus, *Pfeil* provides three criteria for a court to consider when deciding if it can resolve a dispute involving religious organizations: (1) can the dispute be resolved under neutral principles of law; (2) would the court disturb a ruling of a governing ecclesiastical body; and (3) would adjudication interfere with an internal church decision that affects the faith and mission of the church. *Id.* Each criterion is addressed in turn.

First, we address whether the dispute can be resolved under neutral principles of law. The "point of a neutral principles test is to apply a purely secular perspective to a dispute, without inquiring into religious doctrine of practice." *Rooney v. Rooney*, 669 N.W.2d 362, 368 (Minn. App. 2003) (citing *Jones*, 443 U.S. at 604, 99 S. Ct. at 3026), *review denied* (Minn. Nov. 25, 2003). A law is neutral when it can be applied without

---

[6] This opinion is not intended to prohibit a district court from limiting specific claims that involve core religious doctrinal disputes because they are based on social or moral policy decisions of the ELCA. However, in the present case we are not persuaded that every allegation was so tied to a religious policy decision that it compels dismissal at the pleadings stage due to a finding of excessive entanglement with religion.

"requir[ing] any reference to or assessment of a religious component." *Odenthal*, 649 N.W.2d at 441.

Appellants argue that their complaint does not require excessive entanglement in religion because it is based on secular, neutral principles of law, not on any dispute over core issues of ecclesiastical concern. The ELCA Plan provides the plan "shall be construed and administered according to the laws of the State of Minnesota to the extent that such laws are not preempted by the laws of the United States of America." As such, appellants contend that Minnesota common law and the MPIA apply. Portico contends that under the MPIA the applicable standard of care is defined by the plan and trust documents. *See* Minn. Stat. § 501C.0901, subd. 1(b) ("The prudent investor rule, a default rule, may be expanded, restricted, eliminated, or otherwise altered by the trust instrument. A trustee is not liable to a beneficiary to the extent that the trustee acted in reasonable reliance on the trust instrument."). Portico alleges that a Minnesota court cannot adjudicate this case "without becoming the arbiter of the Church's Continuing Resolutions, Social Statement, and Philosophy of Benefits." However, many of the claims in appellants' complaint do not challenge any church resolutions, the social statement, or the philosophy of benefits. Because the plan documents themselves contain the fiduciary duties, a Minnesota court can adjudicate many of the claims without reaching the religious documents.

Next we address whether resolution of the dispute would disturb a ruling of a governing ecclesiastical body. There does not appear to be a specific ruling of a governing ecclesiastical body at issue in this case. *Cf. Basich*, 540 N.W.2d at 86 (determining resolution of the dispute would disturb the ELCA's determination that the Board of

Pensions divest funds from companies with holdings in South Africa). Portico relies generally on the ELCA's constitution, social statement, and philosophy of benefits; however, as discussed above, a Minnesota court may not need to consider them to resolve the issues in this case.

Finally, we address whether adjudication of appellants' claims would interfere with an internal church decision that affects the faith and mission of the church. "Excessive entanglement is, ultimately, a question of degree." *Black v. Snyder*, 471 N.W.2d 715, 721 (Minn. App. 1991), *review denied* (Minn. Aug. 29, 1991). A review of the Minnesota caselaw on which the parties rely is helpful in determining what degree of entanglement is permissible. In *Basich* we held that excessive entanglement exists when a court must "distinguish between investments that Lutheran doctrine should find to be morally acceptable and those that it should find to be morally unacceptable." 540 N.W.2d at 86.

In *Black*, an associate pastor at a Lutheran church filed a discrimination charge against her supervising pastor alleging that he made unwelcome sexual advances toward her. 471 N.W.2d at 717-18. Her employment was later terminated, and she sued the church, the ELCA, and her supervising pastor based on five causes of action: sexual harassment and retaliation under the Minnesota Human Rights Act, breach of contract, defamation, and wrongful termination under the Minnesota Whistle Blower Act. *Id.* at 718. She sought "damages and injunctive relief ordering public admission of the wrongfulness of her discharge and cleansing of her personnel record." *Id.* We determined the prohibition of excessive entanglement with internal church affairs prohibited judicial review of the discharge-related claims; however, we reversed the trial court's dismissal of

13

the sexual-harassment claim because it did not "involve scrutiny of church doctrine, interfere in matters of an inherently ecclesiastical nature, or infringe upon the church's religious practice." *Id.* at 721.

In *Hill-Murray Fed'n of Teachers v. Hill-Murray High Sch.*, lay employees of a Catholic high school petitioned the Minnesota Bureau of Mediation Services for determination of an appropriate bargaining unit and certification as exclusive representative under the Minnesota Labor Relations Act (MLRA). 487 N.W.2d 857, 859-60 (Minn. 1992). The court noted that "[t]he obligation imposed upon Hill-Murray by the application of the MLRA is the duty to bargain about hours, wages, and working conditions" and "decline[d] to categorize [the] minimal responsibility as excessive entanglement." *Id.* at 864. It reasoned that "[a]llowing lay teachers, almost all of whom are Catholic, to bargain collectively will not alter or impinge upon the religious character of the school." *Id.* It concluded that "[t]he [F]irst [A]mendment wall of separation between church and state does not prohibit limited governmental regulation of purely secular aspects of a church school's operation." *Id.*

In *Odenthal*, a church member brought a negligence action against his minister alleging that the minister engaged in improprieties while counseling the church member's wife. 649 N.W.2d at 429-33. The *Odenthal* court held that, "[w]here statutes regulating unlicensed mental health practitioners provide neutral principles of law to apply in a negligence action against a member of the clergy, a court may adjudicate the claim without excessive entanglement with religion," and "[a]djudication of a negligence claim against a

14

member of the clergy based on neutral standards of conduct set forth in statute does not violate Article I, Section 16 of the Minnesota Constitution." *Id.* at 428-29.

In *Doe v. Lutheran High Sch. of Greater Minneapolis*, a man who was a secular teacher and a pastor at a religious high school brought a wrongful-discharge claim against the school alleging that he was discriminated against based on his sexual orientation. 702 N.W.2d 322, 324-26 (Minn. App. 2005), *review denied* (Minn. Oct. 26, 2005). We noted that "there is no evidence showing that [the teacher] had a position that could be split into secular and nonsecular so that they could be considered separately and, further, analysis of [the teacher's] claim would require delving into church doctrine." *Id.* at 327. We concluded that analyzing whether the teacher should not have been discharged based on his sexual orientation "intrudes into church doctrine and church administrative matters and engenders a prohibited relationship between the church and the judiciary," and as such "resolution of [the teacher's] claims would violate the establishment doctrine of the First Amendment." *Id.*

Many issues in the present case can be resolved by an application of a neutral law, the MPIA. As such, the present case is similar to *Hill-Murray* where the court determined the MLRA applied to a religious school, *see* 487 N.W.2d at 864, and *Odenthal* where the case could be resolved using the statutes regulating unlicensed mental-health practitioners. *See* 649 N.W.2d at 440-41. The present case is distinguishable from *Basich*, *Black*, and *Doe* because it does not require a court to adjudicate the validity of a doctrinal question.

Although Portico and the amicus, the Church Alliance, rely heavily on the ELCA constitution, a Minnesota court would not need to interpret the ELCA constitution to

15

resolve most, if not all, of the claims in appellants' complaint. With the exception of a challenge to the "social purpose funds," a court could resolve the claims relying on the plan documents, the MPIA, and the common law of Minnesota. This position is strengthened when one considers that the plan documents provide that any issues that arise under the ELCA Plan should be heard in Hennepin County using Minnesota law. While assessing whether there are alternative "social purpose" investments that would comply with the "Social Statement on Economic Life" would excessively entangle Minnesota courts with religion and, therefore, violate the Establishment Clause, *see Basich*, 540 N.W.2d at 86, it does not follow that resolution of the remainder of appellants' claims would create excessive entanglement, which is always a matter of degree. *See Black*, 471 N.W.2d at 721.

Based on an analysis of the facts of this case compared with the facts of precedential Minnesota excessive-entanglement cases and applying the criteria in *Pfeil*, it appears this may be a case where "the autonomy granted to religious institutions by the First Amendment is not boundless," because a court could "use 'neutral principles of law' to resolve [the] controvers[y] involving religious institutions and their parishioners." *Pfeil*, 877 N.W.2d at 533 (quoting *Jones*, 443 U.S. at 602-05, 99 S. Ct. at 3025-26).

Portico argues this court should "also affirm dismissal of the complaint under the Minnesota Freedom of Conscience Clause." *See* Minn. Const. art. I, § 16. When determining whether the Freedom of Conscience Clause prohibits a court from hearing a claim, we balance "the compelling state interest against the least restrictive alternative." *Doe*, 702 N.W.2d at 328. We consider the following factors: "[1] whether the objector's

16

belief is sincerely held; [2] whether the state regulation burdens the exercise of religious beliefs; [3] whether the state interest in the regulation is overriding or compelling; and [4] whether the state regulation uses the least restrictive means." *Id.* (alterations in original) (quoting *Hill-Murray*, 487 N.W.2d at 865). Portico's argument fails on the second factor because we are not convinced at this stage in the litigation that adjudicating this case in a Minnesota court will burden the exercise of religion. Because Portico has not, at this time, met its burden in establishing that its exercise of religious beliefs is burdened by judicial oversight, we do not reach the balancing test of the third and fourth factors. *See Edina Cmty. Lutheran Church v. State*, 745 N.W.2d 194, 208-10 (Minn. App. 2008) (reaching the balancing test where respondent churches established that their religious beliefs were sincere and the exercise of their religious beliefs was burdened), *review denied* (Minn. Apr. 29, 2008).

In conclusion, we are not persuaded that appellants have "fail[ed] to state a claim upon which relief can be granted" based on excessive entanglement with religion under the Establishment or Free Exercise Clauses of the First Amendment to the U.S. Constitution or the Freedom of Conscience Clause of the Minnesota Constitution. Minn. R. Civ. Pro. 12.02(e). As such, we reverse the district court's dismissal of appellants' claims and remand for proceedings consistent with this opinion.

**Reversed and remanded.**