632 N.W.2d 783 (2001)
Steven R. ODENTHAL, Respondent,
v.
MINNESOTA CONFERENCE OF SEVENTH-DAY ADVENTISTS, Appellant,
General Conference of Seventh-Day Adventists; Minnetonka Seventh-Day Adventist Church, Defendants,
Lowell Rideout, Appellant.
Nos. C1-01-278, C4-01-291.
Court of Appeals of Minnesota.
August 28, 2001.
*785 Ronald I. Meshbesher, Katherine S. Flom, Debra A. Filteau, Meshbesher Spence, Ltd., Minneapolis, MN, (for respondent).
Patrick T. Tierney, Collins, Buckley, Sauntry Haugh, P.L.L.P., St. Paul, MN, (for appellant Minnesota Conference of Seventh-Day Adventists).
Richard L. Pemberton, Jr., Leatha G. Wolter, Erica Gutmann Strohl, Meagher Geer, P.L.L.P., Minneapolis, MN, (for appellant Rideout).
Considered and decided by TOUSSAINT, Chief Judge, HALBROOKS, Judge, and LINDBERG, Judge.

OPINION
TOUSSAINT, Chief Judge
The district court denied appellants motion for summary judgment on respondents claim against appellant minister for negligent counseling. Appellants challenge this decision, asserting that the district court does not have subject matter jurisdiction over the action. Because resolution of the claim would result in excessive entanglement with religion in violation of the First Amendment, we reverse.

FACTS
Respondent Steven Odenthal and his then-wife Diane were members of the Minnetonka Seventh-Day Adventist Church. The couple sought marital counseling from their minister, appellant Lowell Rideout. He met with them as a couple and individually from mid-1997 until September 1999.
Respondent contends that Rideout acted inappropriately in a number of respects. During one of the first counseling sessions, Rideout told respondent that he felt very attracted to Diane Odenthal and needed to pray about it. Rideout administered a psychological or personality test to the Odenthals and advised them based on the test that their personality types were very different, which would make it very difficult for them to have a harmonious marriage. In contrast, Rideout said that his own personality type was very similar to Dianes. In May 1998, church members, including Rideout and Diane Odenthal, stayed at a motel during a three- or four-day out-of-state seminar, during which time Rideout provided counseling to Diane in her motel room. In a 1999 counseling session, Rideout asked Diane Odenthal to make a list of the qualities she would like to see in a fantasy man and then told her that he was her fantasy man. During this same period, Rideout told respondent while they were meeting alone that if Rideout made himself available, Diane Odenthal would run off with him. Rideout also told respondent that respondent and his wife were not right for each other from the beginning and that Rideout did not have any hope for a good solution.
*786 On September 30, 1999, Rideout was forced to resign his ministry, largely because of his relationship with Diane Odenthal. Respondent acknowledged that there was no evidence that Rideout and Diane Odenthal were sexually intimate while Rideout was providing them with pastoral counseling or at any time before Rideout left the church. Respondent and Diane Odenthal separated around the end of October 1999. Respondent served Diane Odenthal with a petition for a legal separation in November 1999, and she subsequently began dissolution proceedings. Rideouts dissolution became final in June 2000. Rideout and Diane Odenthal are now married.
Respondent contended that Rideout, while acting as a trained counselor, breached confidentiality and violated counseling relationship boundaries by repeatedly disclosing personal information. He also asserts that Rideout repeatedly violated church doctrine and policy regarding limits on the counseling a minister may provide, as set out in the Seventh-Day Adventist Ministers Handbook. He sued Rideout for (1) clergy malpractice; (2) intentional infliction of emotional distress; (3) breach of fiduciary duty or confidential relationship; and (4) negligence. The court dismissed all counts except negligence and ruled that the claim was neither prohibited by the First Amendment nor barred by Minn.Stat. §§ 553.01-.03, (2000), abolishing civil causes of action for alienation of affection. Respondent also sued several church organizations, but the only claim remaining against them after summary judgment is the claim for vicarious liability against the Minnesota Conference of Seventh-Day Adventists. Rideout and the Minnesota Conference appeal.
Respondent moved to dismiss this appeal as taken from a nonappealable order. This court allowed the appeal to proceed on the sole issue of whether the district court had subject matter jurisdiction to hear the negligence claim without excessive entanglement in religious matters.

ISSUE
Does the district court have subject matter jurisdiction over respondents claim for negligent counseling?

ANALYSIS
An interlocutory appeal raising the issue of subject-matter jurisdiction is immediately appealable. McGowan v. Our Savior's Lutheran Church, 527 N.W.2d 830, 833 (Minn.1995). An appellate courts review of subject matter jurisdiction is de novo. Basich v. Board of Pensions, Evangelical Lutheran Church in Am., 540 N.W.2d 82, 85 (Minn.App.1995), review denied (Minn. Jan. 25, 1996).
The First Amendment to the United States Constitution provides that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. U.S. Const. amend. I. The amendment governs both legislation and judicial determinations. Franco v. The Church of Jesus Christ of Latter-Day Saints, 21 P.3d 198, 203 (Utah 2001) (citing Kreshik v. St. Nicholas Cathedral, 363 U.S. 190, 191, 80 S.Ct. 1037, 1038, 4 L.Ed.2d 1140 (1960)). It is applicable to the states through the Fourteenth Amendment. Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). The Minnesota Constitution guarantees that control of or interference with the rights of conscience [will not] be permitted and that the state will not show preference to any religious establishment or mode of worship. Minn. Const. art. I, § 16.
Appellants contend that the lawsuit violates the prohibition against laws *787 respecting the establishment of religion. To meet an Establishment Clause challenge, a lawsuit must (1) have a secular purpose; (2) neither advance nor inhibit religion as its primary effect; and (3) not foster excessive governmental entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). Courts focus on the excessive entanglement issue in addressing tort liability of clergy. Franco, 21 P.3d at 203.
In assessing whether there is excessive entanglement, a number of factors will be considered, including
[t]he character and purpose of the institution involved, the nature of the regulations intrusion into religious administration, and the resulting relationship between the government and the religious authority.
Black v. Snyder, 471 N.W.2d 715, 720 (Minn.App.1991) (citing Lemon, 403 U.S. at 614-15, 91 S.Ct. at 2112), review denied (Minn. Aug. 29, 1991). When the claims against religious institutions concern core questions of church discipline and internal governance, the inevitable danger of governmental entanglement precludes judicial review. Black, 471 N.W.2d at 720 (citing Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 717, 721, 96 S.Ct. 2372, 2384, 2386, 49 L.Ed.2d 151 (1976)). But when the claims can be resolved by neutral principles of law, such claims may go forward. Basich, 540 N.W.2d at 85 (citing Jones v. Wolf, 443 U.S. 595, 602, 99 S.Ct. 3020, 3025, 61 L.Ed.2d 775 (1979)).
The district court dismissed respondents claim for clergy malpractice on the ground that Minnesota does not recognize the cause of action. But it ruled that the claim for negligent counseling could stand because Rideout had exceeded the limits of pastoral counseling and thereby engaged in secular counseling, for which he could be held liable in negligence. The elements of an action for negligence include (1) duty; (2) breach of that duty; (3) that the breach of the duty be the proximate cause of plaintiffs injury; and (4) damages. Minneapolis Employees Retirement Fund v. Allison-Williams Co., 519 N.W.2d 176, 182 (Minn.1994). While the general standard of care is that of a reasonably prudent person, for a negligence action against a professional, the standard is whether the defendant exercise [d] the degree of care and skill usually exercised by members of the profession under similar circumstances. Id. (citation omitted).

Clergy Malpractice
In analyzing the issues, we must first examine the dismissed claim of clergy malpractice, in anticipation of a comparison with the allegedly distinct claim for negligent counseling. According to several recent cases, the claim of clergy malpractice has been universally rejected by courts in the United States. Teadt v. St. John's Evangelical Church, 237 Mich.App. 567, 603 N.W.2d 816, 822 (1999); see Franco, 21 P.3d at 204 (same). The most difficult aspect of a clergy malpractice action concerns the duty of care. See F.G. v. MacDonell, 150 N.J. 550, 696 A.2d 697, 703 (1997). This could embroil courts in establishing the training, skill, and standards applicable for members of the clergy in a diversity of religions with widely varying beliefs. Id. (citation omitted). Further, it would require courts to identify the beliefs and practices of the relevant religion and then to determine whether the clergyman had acted in accordance with them. Id. (citations omitted). Doing so would necessarily entangle the courts in the examination of religious doctrine, practice, or church polity, which is prohibited by the Establishment Clause. Franco, 21 P.3d at 204.

*788 Negligent Counseling

While appellants contend that this is really a clergy malpractice claim and respondent contends it is a separate tort, the determinative issue is whether resolution of the claim will result in excessive entanglement in religion. The district court determined that Rideout had exceeded the limits for pastoral counseling under the standards set out in the churchs ministers handbook. It determined he had engaged in secular counseling by using a secular psychological test for analyzing the Odenthals marital situation and cited the expert testimony that Rideout had provided psychotherapy and acted as a marriage counselor for the Odenthals from mid 1997 through mid-1999.
Respondent asserts that caselaw supports a claim for negligent counseling that is distinct from the prohibited clergy-malpractice claim. These cases, however, rest on a free-exercise argument that is not at issue here. See, e.g., Sanders v. Casa View Baptist Church, 134 F.3d 331, 335-36 (5th Cir.1998) (First Amendment does not categorically insulate religious relationships from judicial scrutiny); DeStefano v. Grabrian, 763 P.2d 275, 283-85 (Colo.1988) (en banc). Respondent also contends that because his tort claim for negligent counseling can be resolved using neutral methods of proof, the First Amendment is not violated. See Black, 471 N.W.2d at 720-21 (reversing dismissal of claim of sexual harassment because claim was unrelated to pastoral qualifications or church doctrine). Respondent also notes that clergy who embark on psychotherapythough unlicensedare subject to disciplinary actions by the office of mental health, although clergy who provide pastoral services are not. See Minn.Stat. § 148B.60, subds. 3, 4 (2000). While not arguing that this statute provides him with a private cause of action, he contends it demonstrates that clergy who engage in counseling may be held to neutral standards and that the state has an interest in regulating ministers whose counseling practices go beyond pastoral counseling required by the church. Finally, he asserts that the state has a compelling interest in protecting counselees from exploitation by counselors.
In determining that Rideout had exceeded the limits of pastoral counseling, the district court examined what it believed were the church-approved standards for pastoral ethics and counseling contained in the ministers handbook. From the chapter on Pastoral Ethics, the court cited the advice that ministers should [s]eldom counsel with women when alone and [b]e cautious of sexual counseling. These caveats were included in a list of solutions for ministers to use in resolving problems arising from romantic attention directed to ministers by female parishioners. The district court also cited from the chapter entitled Counseling, in which it is recommended that ministers should limit their counseling to four or five sessions, making your time and expertise available to more people and to [k]now when to refer. These statements were within the context of a discussion of the limited time and expertise that ministers have to offer as counselors.
[T]he First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government. Milivojevich, 426 U.S. at 724, 96 S.Ct. at 2387. The district court here, however, determined that certain provisions in the ministers handbook set out standards applicable to appellant and determined he did not meet these standards. In effect, the district court concluded that a minister who did not follow these ethical codes and counseling guidelines *789 stepped outside of the role of a minister. By interpreting and analyzing the language and intent of the ministers handbook, the district court did precisely what the First Amendment forbids, resulting in the excessive entanglement of the district court in religious doctrine, practice, or church polity. Franco, 21 P.3d at 204. Resolution of the negligent counseling claim would therefore violate the First Amendment.

DECISION
The decision by the district court denying appellants motion for summary judgment as to the negligent counseling claim is reversed.
Reversed.
PETER J. LINDBERG, Judge (dissenting)[*]
I respectfully dissent. I would affirm and hold that the district court had jurisdiction over Odenthals lawsuit against appellants for negligent counseling.
The majority holds that this lawsuit violates the Establishment Clause of the First Amendment because its resolution would require excessive entanglement in religion. I disagree, because clergy are not protected by the First Amendment for conduct unrelated to pastoral qualifications or issues of church doctrine. See Black v. Snyder, 471 N.W.2d 715, 721 (Minn.App.1991) (holding Establishment Clause of First Amendment does not bar former pastors sexual harassment claim against church), review denied (Minn. Aug. 29, 1991).
Odenthal produced evidence supporting his contention that Rideout engaged in conduct that constituted secular counseling. First, Rideout used a psychological test, which is a secular counseling tool. Next, the guidelines set out in the Seventh-Day Adventist Ministers Handbook envisioned only short-term pastoral counseling (four or five sessions at most) and strongly advised against counseling women alone. It is undisputed that Rideout counseled the Odenthals for some two years, including a number of individual sessions with Diane Odenthal. Odenthal also offered the depositions of several Seventh-Day Adventist officials, who opined that Rideouts actions in counseling the Odenthals went far beyond the conduct they expected from their ministers. Finally, Odenthal presented expert opinion from a psychologist that Rideout was providing therapy and acting as a marriage counselor.
The majority also indicates concern that assessing the standard of care would involve entanglement in church doctrine. But here, the standard of care would be a neutral one, applicable to any counselor charged with negligence. See Zagaros v. Erickson, 558 N.W.2d 516, 521 (Minn.App.1997) (holding psychologist has duty to diagnose mental disease and to apply proper treatment), review denied (Minn. Apr. 17, 1997); see also Margaret A. Burton, Comment, Nally v. Grace Community Church: Is There a Future for Clergy Malpractice Claims?, 37 Santa Clara L.Rev. 467, 509 (1997) (proposing neutral standard of care for clergy malpractice claims).
We also look to the state legislature, which has indicated that clergy who engage in secular nonpastoral counseling are subject to state regulation. See Minn.Stat. § 148B.60, subds. 3, 4 (2000) (providing that clergy who engage in professional mental health activities are subject to discipline *790 under state office of mental health practice, while clergy engaged in pastoral counseling are not). For purposes of the office of mental health practice, the legislature has defined mental health services to include psychotherapy, although it excludes pastoral services.
Mental health services means psychotherapy and the professional assessment, treatment, or counseling of another person for a cognitive, behavioral, emotional, social, or mental condition, symptom, or dysfunction, including intrapersonal or interpersonal dysfunctions. The term does not include pastoral services provided by members of the clergy to members of a religious congregation in the context of performing and fulfilling the salaried duties and obligations required of a member of the clergy by that religious congregation.
Id., subd. 4. Further, the office may impose disciplinary action on such clergy who engage in wrongful conduct, including revoking or suspending the right to practice, imposing conditions on the practice, and assessing penalties. Minn.Stat. § 148B.69, subd. 1 (2000). We also note that clergy who engage in sexual contact with their counselees while providing psychotherapy are subject to an action for sexual exploitation by their victims. Minn.Stat. §§ 148A.01, subd. 5, .02 (2000). Thus, the state legislature has no difficulty in separating protected pastoral counseling from nonprotected secular counseling.
In short, where Rideout held himself out to be a secular counselor, he had a duty to use the standard of care that any such counselor must follow. If he crosses the line and breaches that standard, he should be subject to an action for negligent counseling. I would affirm.
NOTES
[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.