Steven R. ODENTHAL, Respondent,

v.

MINNESOTA CONFERENCE OF SEVENTH–DAY ADVENTISTS, Appellant,

General Conference of Seventh–Day Adventists; Minnetonka Seventh–Day Adventist Church, Defendants,

Lowell Rideout, Appellant.

Nos. C1–01–278, C4–01–291.

Court of Appeals of Minnesota.

Jan. 27, 2003.

Ronald I. Meshbesher, Katherine S. Flom, Meshbesher & Spence, Ltd., Minneapolis, MN, for respondent.

Patrick T. Tierney, Collins, Buckley, Sauntry & Haugh, P.L.L.P., St. Paul, MN, for appellant Minnesota Conference of Seventh–Day Adventists.

Richard L. Pemberton, Jr., Meagher & Geer, P.L.L.P., Minneapolis, MN, for appellant Rideout.

Considered and decided by TOUSSAINT, Chief Judge, SCHUMACHER, Judge, and HALBROOKS, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

Respondent Steven R. Odenthal sued appellant Minnesota Conference of Seventh–Day Adventists (MCSDA) for negligent retention, supervision, and training (negligent employment) and appellant Lowell Rideout for negligent counseling, intentional infliction of emotional distress, clergy malpractice, and breach of fiduciary duty. He alleged vicarious liability against MCSDA. Rideout and MCSDA moved the district court for summary judgment, seeking a dismissal of all claims. The court granted Rideout's motion as to the claims of intentional infliction of emotional distress, clergy malpractice, and breach of fiduciary duty but denied Rideout's motion on the negligent counseling claim as well as the claims against MCSDA, ruling that these claims could be adjudicated without violating the First Amendment's prohibition against excessive entanglement with religion. Rideout and MCSDA appealed to this court.

This court reversed the district court, holding that resolution of the negligent counseling claim would result in an impermissible entanglement with religion. *Odenthal v. Minn. Conference of Seventh–Day Adventists,* 632 N.W.2d 783 (Minn. App.2001), *rev'd,* 649 N.W.2d 426 (Minn. 2002). The Minnesota Supreme Court reversed, affirming the district court's denial of summary judgment on the negligent counseling claim against Rideout. *Odenthal v. Minn. Conference of Seventh–Day Adventists,* 649 N.W.2d 426 (Minn.2002). The supreme court remanded to this court the issue of whether the district court had subject-matter jurisdiction over Odenthal's claims against MCSDA for negligent employment and vicarious liability. *Id.* at 443. We affirm the district court's denial of summary judgment on these claims and remand for further proceedings.

## FACTS

In 1997, Odenthal and his wife Diane Odenthal (Diane) sought counseling from their pastor Rideout. They met once or twice every two weeks between May and August 1997, usually at the Odenthals' home but occasionally at the church or Odenthal's office. According to Odenthal, Rideout described these meetings as marital counseling. Early on, Rideout told Odenthal that he was attracted to Diane. The Odenthals also obtained professional counseling during this period; their relationship improved and they ended the professional counseling in August 1997.

The Odenthals continued to meet with Rideout, but by February 1998, their marital relationship had deteriorated. In addition, Odenthal became concerned about the closeness of Diane and Rideout's relationship. In February 1998, Rideout included other people in the counseling sessions, including Odenthal's brother and Kathy Just, a church elder who had experience as

a counselor. After several meetings, however, Just told Rideout that he was too personally involved to provide marital counseling and that the Odenthals' martial problems were very severe.

The Odenthals again sought professional counseling, and the counselor advised them to remove themselves from their relationship with Rideout. During this time, Rideout told Odenthal that he (Rideout) was Diane's "fantasy man" and that she would "run off" with him if asked.

After leaving the church for several months, the Odenthals returned and, contrary to the advice of their counselor, continued joint and individual meetings with Rideout. In May 1999, Diane and Rideout told each other they were in love. They did not tell Odenthal, whom Rideout continued to counsel.

Meanwhile, in April 1999, Dennis Carlson, the president of MCSDA, received three anonymous letters complaining of the inappropriate relationship between Diane and Rideout, but Carlson did not investigate. In May 1999, Odenthal's mother expressed her concerns to Carlson. He then examined Rideout's personnel file and found a letter stating that while Rideout had been serving at another church as pastor, a woman had accused him of sexual improprieties. Carlson did not investigate further but did speak with Rideout, who described Diane as a special friend but denied having an inappropriate relationship. Although MCSDA has a policy regarding investigation of complaints involving sexual improprieties that provides for the formation of a "sexual ethics committee," Carlson took no action, believing that there was insufficient specific information to proceed.

In late September 1999, Rideout's wife and other members of the church met with Carlson to discuss their concerns about Rideout's relationship with Diane. On that day, Carlson learned that at least ten people had conducted meetings with Rideout in the prior two years regarding inappropriate conduct with Diane. Carlson confronted Rideout and he resigned. Rideout and his wife then divorced, as did Odenthal and his wife. Rideout and Diane were married shortly thereafter.

## ISSUES

1. Are the negligent employment and vicarious liability issues properly before this court?

2. May claims against a church employer for negligent supervision and training and negligent retention of a pastor who allegedly engaged in negligent secular counseling be resolved through application of neutral principles of law?

3. May a claim for vicarious liability against a church employer based on allegations of negligent secular counseling by its pastor be resolved through application of neutral principles of law?

## ANALYSIS

■ Subject-matter jurisdiction is a question of law reviewable de novo. *Odenthal v. Minn. Conference of Seventh–Day Adventists*, 649 N.W.2d 426, 434 (Minn. 2002).

■ 1. We first address whether the issues of negligent employment and vicarious liability are properly before this court. Odenthal argues that because MCSDA failed to challenge the district court's ruling that it had jurisdiction over the negligent employment and vicarious liability claims in its first appeal to this court, it waived the issues and may not raise them now. MCSDA contends that it did raise the issue and moves to strike Odenthal's argument on the ground that the supreme court instructed this court to address the issue.

After ruling that the district court had subject-matter jurisdiction over Odenthal's negligent counseling claim against Rideout, the supreme court remanded the appeal to this court to address whether the district court also had subject-matter jurisdiction over Odenthal's negligent employment and vicarious liability claims against MCSDA. *Id.* at 443. In addition, these issues of subject-matter jurisdiction may not be waived. *Marzitelli v. City of Little Canada,* 582 N.W.2d 904, 907 (Minn.1998). Accordingly, we deny MCSDA's motion to strike.

██ 2. "[T]he role of secular courts in resolving religious disputes" is limited by state and federal constitutions. *Odenthal,* 649 N.W.2d at 434. As to the federal constitution, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The First Amendment applies to judicial power. *Odenthal,* 649 N.W.2d at 435 (citing *Kreshik v. St. Nicholas Cathedral,* 363 U.S. 190, 191, 80 S.Ct. 1037, 1038, 4 L.Ed.2d 1140 (1960)). To pass muster under the First Amendment,

> a state action must have a secular purpose, must neither inhibit nor advance religion in its primary effect, and must not foster excessive governmental entanglement with religion.

*Id.* (citing *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971)). At issue in this case is the third prong, the entanglement doctrine, under which the court "may not inquire into or review the internal decision-making or governance of a religious institution." *Id.* (citing *Jones v. Wolf,* 443 U.S. 595, 602, 99 S.Ct. 3020, 3025, 61 L.Ed.2d 775 (1979)). If civil courts can resolve the issues by "neutral principles of law" by applying rules or standards "without particular regard to religious institu-

tions," there is no entanglement problem. *Id.* (citing *Jones,* 443 U.S. at 602–04, 99 S.Ct. at 3025–26).

In applying these principles to Odenthal's claim of negligent counseling against Rideout, the supreme court ruled that the church's minister's handbook that described the minister's duties could not be used to resolve this claim. *Id.* at 436. The handbook offered guidelines for counseling, stating that ministers should offer only four or five sessions, emphasizing their limited expertise in counseling. It recommended against counseling women alone, cautioned against sexual counseling, and offered solutions for handling romantic interest from women parishioners. *Odenthal,* 632 N.W.2d at 788.

The court reasoned that because the handbook constituted a statement of the church's policy regarding pastoral counseling, litigation to determine the limits of the policy through use of the handbook would pose a serious risk of entanglement. *Odenthal,* 649 N.W.2d at 436. In contrast, the court ruled that the statute regulating unlicensed mental health practitioners, Minn.Stat. § 148B.60 (1998), provided a neutral standard by which the claim could be resolved because the statutory standards were secular and could be applied without affecting the religious aspects of clerical counseling. *Id.* Consequently, it held that the district court had subject-matter jurisdiction over the claim against Rideout. *Id.* at 438–43.

At issue here is whether Odenthal's claims against MCSDA may similarly be resolved through the use of neutral standards. MCSDA argues that resolving Odenthal's claims for negligence in hiring, supervising, or retaining a minister would involve the courts in the church's fundamental right to recognize individuals who have been called by God to ministry. *See Black v. Snyder,* 471 N.W.2d 715, 720–21

(Minn.App.1991) (dismissing claims relating to pastor's appointment and discharge as fundamentally connected to issue of church doctrine and governance, but allowing resolution of sexual harassment claim as resolvable by neutral standards), *review denied* (Minn. Aug. 29, 1991). We note that Odenthal has not asserted a claim for negligent hiring. MCSDA contends that scripture governs discipline within the church, and that if a minister trespasses but repents, scripture requires forgiveness. It notes that courts have been cautioned against "making sensitive judgments about the propriety of the Church Defendants' supervision in light of their religious beliefs." *Schmidt v. Bishop*, 779 F.Supp. 321, 332 (S.D.N.Y.1991).

 Minnesota has long recognized that an employer has the "duty to refrain from retaining employees with known dangerous proclivities." *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 423 (Minn.App. 1993) (citation omitted), *review denied* (Minn. Apr. 20, 1993). Thus, the employer may be liable for negligent retention when

> during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment.

*Id.* at 423–24 (citation omitted).

 We are not addressing the issue of negligent retention as it relates to Rideout's duties as a pastor. Instead, the question relates to whether MCSDA negligently retained Rideout without further investigation after it became aware or should have been aware of his claimed negligent secular counseling.

Odenthal has set forth facts showing that MCSDA knew or should have known of problems with Rideout indicating his unfitness for secular counseling, but failed to investigate or otherwise taken action. These include a 1995 letter in Rideout's personnel file referring to a "false accusation" regarding claims of sexual impropriety against Rideout at an earlier church, three anonymous letters in April 1999 sent to MCSDA's president expressing specific concerns about the relationship between Rideout and Diane and an expression of similar concerns by Odenthal's mother. Although Carlson confronted Rideout with one of the anonymous letters in May 1999, Rideout denied any impropriety, referring only to his special friendship with Diane.

No further action was taken until a meeting in late September 1999, prompted by a call from Rideout's wife, at which church elders expressed their concerns. Carlson learned that at least ten people had meetings with Rideout to confront him about his inappropriate relationship with Diane. It was only after this meeting that Carlson suggested Rideout resign, and he did so. By applying the tort standard to these facts, the court may use a neutral standard to resolve the claim; no reference to church doctrine is necessary.

 Odenthal also asserted a claim for negligent supervision and training.[1] Negligent supervision is derived from the respondeat superior doctrine, which relies on connection of the wrongful act to the employer's premises or chattels. *Yunker*, 496 N.W.2d at 422. To prevail, the plaintiff must show "that the employee's conduct was foreseeable and that the employer failed to exercise ordinary care when supervising the employee." *Oslin v. State*,

---

1. At oral argument, the attorney for Odenthal stated that no claim is being raised for negligent training.

543 N.W.2d 408, 415 (Minn.App.1996) (citation omitted), *review denied* (Minn. Apr. 1, 1996).

The district court relied on the minister's handbook to provide the standards for assessing the claims. Because use of the handbook "poses a serious risk of religious entanglement for a court attempting to discern its limits," the supreme court prohibited reliance on it. *Odenthal,* 649 N.W.2d at 436. Again, we must focus on negligent supervision not as to Rideout's pastoral counseling, which could pose the risk of religious entanglement, but as to the negligent secular counseling claim. Just as the negligent counseling claim against Rideout may be assessed by the neutral standards of the statute governing unlicensed mental health practitioners, so too can the neutral standard of care for supervising unlicensed mental health practitioners be used to address the claims against MCSDA. Consequently, the district court has subject-matter jurisdiction to address this claim.

■■■ "[T]he state constitution protects the right to free exercise of religion and prohibits the establishment of religion * * *." *Id.* at 442 (citing Minn. Const. art. I, § 16). It provides greater protection to the exercise of religious liberty than the federal constitution. *Id.* In considering whether the Minnesota Constitution bars adjudication of a claim, the following factors will be considered:

> [W]hether (1) the objector's belief is sincerely held; (2) the state action burdens the exercise of religious belief; (3) the state's interest is overriding or compelling; and (4) the state action uses the least restrictive means.

*Id.* (citation omitted).

Applying these factors as the supreme court did in *Odenthal,* we hold that there is no showing the claims are barred by the Minnesota Constitution. First, we conclude, as the supreme court did, that "for the purpose of the analysis we recognize the presence of a sincerely held religious belief." *Id.* Second, Rideout's challenged conduct was secular, so this action will not unduly burden the exercise of religious belief. *Id.* Third, "[g]iven the frequently vulnerable nature of those receiving mental health services, the state's interest in their safety and well-being is compelling." *Id.* at 443 (footnote omitted). Finally, the state regulates only secular conduct and does not regulate the provision of spiritual advice or guidance by clergy members. *Id.* Subjecting MCSDA to Odenthal's negligent employment claims does not violate the state constitutional protections.

■■ 3. "Under the 'well-established principle' of respondeat superior, 'an employer is vicariously liable for the torts of an employee committed within the scope of employment.' " *Fahrendorff v. North Homes, Inc.,* 597 N.W.2d 905, 910 (Minn. 1999) (citation omitted). This is not based on the employer's fault; instead, courts have determined as a matter of public policy that "liability for acts committed within the scope of employment should be allocated to the employer as a cost of engaging in that business." *Id.* (citation omitted).

■■ The test for determining if the negligent conduct occurred within the scope of employment is

> whether (1) the conduct was to some degree in furtherance of the employer's interests, (2) the employee was authorized to perform the type of conduct, (3) the conduct occurred substantially within authorized time and space restrictions, and (4) the employer should reasonably have foreseen the conduct.

*Snilsberg v. Lake Washington Club,* 614 N.W.2d 738, 745 (Minn.App.2000) (citation

omitted), *review denied* (Minn. Oct. 17, 2000).

 MCSDA contends that because the negligent secular counseling claim is based on Odenthal's argument that Rideout was not acting within the scope of his duties as a minister, it cannot be held vicariously liable. *See, e.g., Dausch v. Rykse,* 52 F.3d 1425, 1428 (7th Cir.1994) (rejecting vicarious liability claims because alleged acts of sexual misconduct were outside scope of employment). But as Odenthal points out, the issue presented here is not a resolution of the merits, but whether the issue can be decided by neutral application of law. *Odenthal,* 649 N.W.2d at 441. Resolution of this claim does not require excessive entanglement with religious doctrine. It may be resolved by application of the facts to the test set out in *Snilsberg,* 614 N.W.2d at 745.

### DECISION

The district court's denial of summary judgment on Odenthal's claims against MCSDA for negligent retention and supervision and vicarious liability is affirmed.

**Affirmed and remanded.**